UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| VINCE LEE WEBB, | ) | Case No. 603-69708-fra7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CHRIS FAIN and VALERIE FAIN, | ) | Adv. Proc. No. 04-6088-fra |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VINCE LEE WEBB, | ) | |
| | ) | MEMORANDUM OPINION |
| Defendant. | ) | |

BACKGROUND

Defendant was an officer and director of CD Micro, Inc., which filed bankruptcy under chapter 7 on November, 24, 2003. Mr. Webb also filed a personal bankruptcy under chapter 7 on the same date. The trustee of the bankruptcy estate of CD Micro filed this adversary proceeding against the Defendant, seeking a

Memorandum Opinion - 1

judgment declaring that certain debts allegedly owed to CD Micro by Defendant are nondischargeable under Code §§ 523(a)(2)(A), (a)(4), and (a)(6).  The cause of action was purchased from the trustee by Chris and Valerie Fain, shareholders in CD Micro, who were then substituted as plaintiffs.  The adversary proceeding is now essentially a shareholder derivative action against the Defendant.  Plaintiffs have filed a motion for partial summary judgment regarding the dischargeability of a judgment obtained by Symantec, Inc., and Quarterdeck, Inc., against CD Micro, Inc., and Mr. Webb, jointly and severally.  A hearing was held on August 3, 2006 at which the parties presented oral argument and the matter was taken under advisement.

## SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056.  The movant has the burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The court must view the facts and draw all inferences in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).  The

Memorandum Opinion - 2

primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).

A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a factfinder might return a verdict in its favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). Bankruptcy Rule 7056, which incorporates Federal Rule of Civil Procedure 56(e), provides that the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must respond with specific facts showing there is a genuine issue of material fact for trial. Absent such response, summary judgment shall be granted if appropriate. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326-27 (1986).

<u>DISCUSSION</u>

A. <u>Concise Statement of Material Facts - Plaintiffs</u>

Relevant and uncontroverted facts submitted by Plaintiffs regarding the allegations subject to Plaintiffs' motion for partial summary judgment:

- Symantec and Quarterdeck have a judgment against CD Micro, Inc., in the amount of $10,003,605, obtained in the U.S. District Court for the District of Oregon.

Memorandum Opinion - 3

- The Symantec action involved allegations that CD Micro and its Chief Executive Officer Webb unlawfully procured, copied, and sold products manufactured by Symantec and Quarterdeck.

- Findings from the District Court opinion by Judge King granting summary judgment to Symantec and Quarterdeck were submitted in which the court held that there was no evidence that "CD Micro unintentionally used a [trade]mark identical to Symantec/Quarterdeck's marks," and found that "[a] reasonable jury would have to conclude that Webb intentionally sold software bearing counterfeit trademarks."

- Declarations submitted in the District Court proceeding and considered by Judge King were also submitted in the present proceeding and included in the Plaintiffs' Concise Statement of Material Facts.

B. <u>Defendant's Liability to CD Micro</u>

The Complaint seeks a judgment declaring that the Symantec/Quarterdeck judgment, "for which Defendant has liability to CD Micro, Inc. and the shareholders and creditors thereof in that amount, less money paid directly to Symantec Corporation," be declared nondischargeable. Neither the Complaint, however, nor Plaintiffs' motion for summary judgment define the nature or computational basis of the alleged debt. The proof of claim filed in the Webb bankruptcy in the amount of $10,313,605 by the

Memorandum Opinion - 4

trustee for CD Micro merely has a copy of the Complaint in this adversary proceeding attached as explanation for the claim.[1]

Both Webb and CD Micro, Inc., are jointly liable for the Symantec debt. If the claim against Webb is for contribution, there must be at minimum a realistic expectation that CD Micro will be forced to pay the debt. As CD Micro is currently in bankruptcy itself, it is highly unlikely that it will be forced to pay anywhere near the $10,313,605 face amount of the judgment. If the claim sounds in tort[2], damages would be awarded based on the injury to the corporation caused by the actions complained of. While the Symantec judgment has had an obvious impact on the financial affairs of CD Micro, there has been no attempt to quantify that impact in financial terms.

C.  <u>Dischargeability</u>

1.  <u>False pretenses, false representation, or actual fraud</u>

§523(a)(2)(A) exempts from discharge debts:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

---

[1] The CD Micro claim was objected to by the trustee for Webb's bankruptcy estate after the claim was assigned to the Fains. The trustee thereafter settled the claim on a disputed basis by allowing it as a non-priority general unsecured claim in the amount of $50,000. The settlement was made without prejudice as to liability or amount of claims asserted by the Fains against Webb personally.

[2] For example: breach of a director's duty of loyalty, acts or omissions not in good faith or which involve intentional misconduct or knowing violation of the law, or receipt of improper personal benefits.

Memorandum Opinion - 5

>    (A) false pretenses, a false representation,
> or actual fraud, other than a statement respecting the
> debtor's or an insider's financial condition....

"False pretenses" or "false representation" both involve intentional conduct intended to create and foster a false impression. See Collier on Bankruptcy ¶ 523.08[1][d] (15th Ed. 1998). The distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement. In re Scarlata, 127 B.R. 1004 (N.D. Ill. 1991); Matter of Haining, 119 B.R. 460 (Bankr. D.Del 1990). There is no significant difference, however, between the terms "false pretenses," "false representation," and "actual fraud." Fraud includes false pretenses and false representation for dischargeability purposes. See 3 Norton Law and Practice 2d § 47:15 n.16. Elements of actual fraud are (1) a representation by the debtor; (2) known by the debtor to be false; (3) made with the intent to deceive the creditor; (4) reliance by the creditor; and (5) damage to the creditor as a result of the representation. In re Apte, 96 F.3d 1319, 1322 (9th Cir. 1996). Reliance by the creditor must be justifiable, rather than reasonable. Id. (citing Field v. Mans, 516 U.S. 59, 72-75 (1995)). Plaintiff must prove each of these elements by a preponderance of the evidence. In re Eashai, 87 F.3d 1082, 1086 (9th Cir. 1996) (citing Grogan v. Garner, 498 U.S. 279, 286-287 (1991)).

Memorandum Opinion - 6

The Ninth Circuit Court of Appeals has held that "[i]t is only the fact of an adverse fraud judgment, and nothing more, that is required for a debt to be nondischargeable . . . [and that] the receipt of a benefit [by the debtor] is no longer an element of fraud under § 523(a)(2)(A)." Muegler v. Bening, 413 F.3d 980, 984 (9th Cir. 2005). The court was interpreting the law in light of the Supreme Court's ruling in Cohen v. De La Cruz, 523 U.S. 213 (1998). In Cohen, the Supreme Court held that "[o]nce it is established that specific money or property has been obtained by fraud, . . . 'any debt' arising therefrom is excepted from discharge." Cohen at 218. Thus, even though the debtor need not directly benefit from the fraud, it is still necessary that specific money or property be obtained through the fraud. Once that has been found, the entire debt associated with the fraud, including e.g. attorney fees, costs, and punitive damages would be nondischargeable.

Plaintiffs argue that Mr. Webb's representations to shareholders and others that the software being sold by CD Micro was authorized constituted a fraudulent representation leading to the Symantec judgment against CD Micro. Plaintiffs, however, have failed to show that the shareholders' reliance on Mr. Webb's representations was justifiable under the circumstances. It is also not clear that specific money or property obtained *from CD Micro* was obtained through the alleged misrepresentation. See

Memorandum Opinion - 7

Nunnery v. Rountree (In re Rountree), 330 B.R. 166, 172 (E.D. Virginia 2004). The fact that Webb may have acted unlawfully toward Symantec does not, by itself, establish a link to Plaintiffs' alleged fraud.

2. Fraud or Defalcation in Fiduciary Capacity

Code § 523(a)(4) excepts from discharge a defalcation by a fiduciary. It is unclear whether the Plaintiffs seek nondischargeability under this section for the Symantec liability, or whether it has been withdrawn. However, to the extent they do, it will be addressed here.

Nothing in the record submitted with the motion for summary judgment suggests a fiduciary relationship existed between the parties. It is true that, under Oregon law, a director and officer has a fiduciary obligation to the corporation, and, by extension, to the corporation's creditors and shareholders. However, this is not the sort of fiduciary relationship contemplated by § 523(a)(4). Cal Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003)("[T]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." [internal citation omitted]).

3. Willful and Malicious Injury

Code § 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or

Memorandum Opinion - 8

to the property of another entity." To meet the willful requirement, it must be shown either that "the debtor has a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208(9th Cir. 2001). Maliciousness requires a finding of "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Id. at 1209. See also Carrillo v. Su (In re Su), 290 F.3d 1140 (9th Cir. 2002).

The Plaintiffs ask the court to find that the opinion by Judge King establishes a willful and malicious injury to another entity or to the property of another entity, and that the bankruptcy court is precluded from finding otherwise.[3] However, to the extent that the opinion by Judge King is applicable to the alleged debt Webb has to CD Micro, I find that it does not as a matter of law establish the elements necessary to find a willful and malicious injury under Code § 523(a)(6).

Judge King reviewed the affidavits and other evidence submitted with the motion for summary judgment in that case. He

---

[3] Judge King found that the plaintiffs in that case (i.e. Symantec and Quarterdeck) suffered a compensable injury. Plaintiffs here appear to argue that Judge King's opinion establishes the elements necessary to find that the joint judgment against Webb and CD Micro in favor of (continued) Symantec/Quarterdeck is nondischargeable under § 523(a)(6) and, by extension, that that finding also applies to any liability Webb may have to CD Micro relating to that judgment.

Memorandum Opinion - 9

held that for purposes of the statute against trademark infringement, the requirement of a knowing or intentional act is satisfied by a showing of "willful blindness." Willful blindness is a form of constructive knowledge that "allows the jury to impute the element of knowledge to the defendant if the evidence indicates that he purposely closed his eyes to avoid knowing what was taking place around him." U.S. v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991). This does not establish for purposes of § 523(a)(6) the subjective intent or knowledge required to find a willful injury as defined by Jercich and Su.

    Plaintiffs next ask the court, if it does not find that the District Court opinion is preclusive with respect to a willful and malicious injury, to examine the affidavits and declarations submitted in that case and determine independently that they establish a willful and malicious injury. A review of those documents indicates that Mr. Webb was warned by various people at various times that product CD Micro was selling appeared to be unauthorized copies of Symantec products, and that Mr. Webb's response was that the software was genuine.[4] A representative of Symantec states by declaration that he examined CD Micro's

---

[4] For example, attached to the declaration of Sharon Deardorff are the affidavits of members of a CD Micro shareholders' meeting in December 2001 who say they were present at the meeting in which Chris Fain expressed his concern to Vincent Webb and others that CD Micro was advertising a Symantec product at prices significantly below retail, and was concerned that this may indicate that the product was not authorized. Mr. Webb responded that CD Micro had the authority to sell the product at that price.

Memorandum Opinion - 10

inventory after the District Court lawsuit was filed and found that it did in fact contain numerous unauthorized copies of Symantec product.  Finally, in a partial transcript of Mr. Webb's deposition testimony, he indicates that he sent a sample disk to Symantec of software CD Micro had obtained from a particular supplier and was told that it was not legitimate, prompting him to probe the supplier for more information.

This is certainly evidence from which one could find on summary judgment a "willful blindness" on the part of Mr. Webb, as did Judge King.  However, when viewing the facts and drawing all inferences in the light most favorable to the nonmoving party (i.e. Mr. Webb), the evidence submitted is not sufficient to find the actual knowledge and intent necessary to find a "willful injury" for purposes of § 523(a)(6) to either Symantec or CD Micro.

D.  <u>Motion to Strike Defendant's Response</u>

Defendant filed a response to Plaintiffs' concise statement of material facts which was past the deadline imposed by the court.  It primarily added information concerning conduct by Gordon Dillard in attempting to extract money from Mr. Webb, and Mr. Dillard's and Chris Fain's release of Symantec from an alleged promise not to sue CD Micro.  That information was also included in the Defendant's Opposition memo, which cited to attached deposition transcripts.  I do not find that Plaintiffs

were prejudiced by Defendant's late filing and will therefore deny their motion to strike.

## CONCLUSION

For the reasons stated above, the court finds that Plaintiffs have failed to establish a prima facie case for nondischargeability of the alleged debt of Defendant to CD Micro under the grounds asserted. Accordingly, Plaintiffs' motion for partial summary judgment will be denied. The court will enter an order in conformity with this Memorandum Opinion.

FRANK R. ALLEY, III
Bankruptcy Judge